### SMITH v. PAYNE et al. (No. 6563.)

(Court of Civil Appeals of Texas. San Antonio. May 11, 1921.)

**Venue ⬮⟲22(1)—Stockholder, converting funds, properly joined as defendant in action by creditor of association.**

Stockholder of unincorporated joint-stock association operating under a declaration of trust, who meddled with the assets or proceeds of the sale of its properties and converted the money to his own use, was, so far as plea of privilege was concerned, properly joined as defendant in an action by a creditor against the association, having the right to call him for an accounting of the funds that belonged to the association, and it was immaterial that under the trust agreement stockholders were not personally liable for debts of association.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by C. H. Payne against D. C. Smith and another. Judgment for plaintiff, and defendant Smith appeals. Affirmed.

McCall & Crawford, of Conroe, for appellant.

Phillips, Trammell & Caldwell and Theodore Mack, all of Fort Worth, for appellees.

COBBS, J. This suit was instituted by C. H. Payne, appellee, in the Sixty-Seventh district court of Tarrant county, against the Oil Producers' Water Supply Company and D. C. Smith, appellant, to recover a judgment for the sum of $2,252.75, upon which there is to be allowed a credit for $750 paid thereon. The amount due is for work and labor performed in the erection, construction, and operation of a water line for the Oil Producers' Water Supply Company, used in furnishing water to drillers in the oil fields of Texas.

It was alleged: That said company was an unincorporated joint-stock association, operating under a declaration of trust filed in the office of the county clerk of Tarrant county, Tex., having its principal office in Tarrant county. That J. M. Sims and E. M. Walker are the sole surviving trustees of said association, and that J. M. Sims was the president and E. M. Walker secretary and treasurer thereof. That both Sims and Walker were residents of Tarrant county, but the present whereabouts of Sims is unknown. That the appellant is a resident of Montgomery county. The only connection that appellant had with such association was that of a stockholder. The parties were doing business under this trust agreement, which is generally known and designated as a common-law obligation, in which the parties usually provide against any personal liability. In regard to the general legal effect of that kind of an obligation, we shall await the hour when the subject is presented to us for decision.

The association became insolvent, and appellant was joined with it in this suit, and he promptly presented and urged his plea of privilege in proper form, demanding his right to be sued only in Montgomery county, Tex., the place of his residence and domicile. This plea was properly controverted, and the issue was formed and submitted upon that demand.

The pleadings and proof showed that appellant, a stockholder, being informed of the insolvency of the association and acting under the orders of E. M. Walker, proceeded to sell out the tangible and available assets of the association, and collected from the sale thereof the sum of $2,125, proceeds of sale of an engine and pump belonging to said association in Wichita Falls, Tex., and appropriated and converted it to his own use. In order to secure his debt, appellee was preparing to fix his statutory lien and to enforce it against such property, but appellant induced and persuaded him to take no steps towards filing his statutory lien, agreeing to turn over to him at once the sum of $1,802.75 to be secured from the proceeds of the sale of the said property, and, being lulled to silence, he took no further steps at the time and appellant proceeded to sell the property and convert the proceeds.

The evidence showed, among other things, by the testimony of Mr. Theodore Mack:

"Some time in October, * * * Mr. E. M. Walker, who is a trustee of the Oil Producers' Water Supply Company, Mr. Payne, and Mr. Smith, the defendant, met in my office to discuss the affairs of the company. I had been representing the company in the way of preparing the trust agreement, oh, perhaps, six months before this conversation took place. Mr. Sims at the time had left under cloud; there were a number of indictments against him, and he had left, but his wife and family were still here. Mr. Payne claimed in that conversation that the company owed him some money, and they owed some money in Wichita. Mr. Walker was present, and Mr. Smith, also, and it was agreed at that time by all three parties that, in view of the fact that Mr. Payne would not file any lien against the property of the company, workman's lien, or contractor's lien, or materialman's lien, or mechanic's lien, and in view of the fact that he would not apply for the appointment of a receiver, all of which was discussed at this conversation, that he and Mr. Smith should go to Wichita county and make disposition of the tangible assets of the company, turn over what he got to creditors up there that were asserting claims against, and, if there was any money left, that Mr. Payne should be paid at Fort Worth, when they returned, the amount that was due him, and then, if there was any left, that it should be apportioned among the stockholders.

"Mr. Payne tried to get a settlement out of Mr. Smith, and Smith would not settle, and then Mr. Payne, about the next day, asked me what to do, and I told him he had better garnishee the fund. At all events, it appears that, according to the statement made by Mr. Smith to me, a check had been issued by some party on a bank in Wichita Falls, with directions to remit the money to the Exchange State Bank here, and as soon as the money was remitted to the Exchange Bank that the money would be distributed. I ascertained from Mr. Smith himself that he had told the bank to send a cashier's check down to his residence at Conroe."

Whatever may be the liability of a mere stockholder in respect to the claim of creditors, acting under such associations, treating the claim of appellee as a creditor and lienholder, or holding a creditor's lien against the general property and assets of the association, he had the right, outside of the alleged fraud claimed to have been perpetrated in Tarrant county, to join him in the suit against that association in that county upon other grounds than a stockholder's liability to creditors, to determine the issues involved peculiarly in this case. As appellant meddled with the assets or proceeds of the sale of its properties, and converted the money to his own use, a creditor, such as appellee, had the right to join him in the suit against the association, whether in the nature of a suit by receivership or otherwise, and call him to an accounting for the funds that belonged to the association in his hands. Against the right of a creditor to sue a stockholder of that association, appellant invokes at least two provisions of the trust agreement, to wit:

"And neither said trustees or shareholders, present or future, shall ever be personally liable therefor, or for any debt incurred, or engagement or contract entered into, by said board of trustees, or by any officer, agent, servant, or employee, acting under them, for or in behalf of this estate, or for any other form of liability, whether arising from contract, express or implied, or from tort or any other way what-

soever, it being the purpose of the trust estate, hereby created, to rest full and absolute control of the trust properties in said trustees and to exempt them and the shareholders thereunder, present and future, from all manner of liability whatsoever, as hereinbefore fully stated. * * * Each shareholder shall be entitled to receive from said trustees a certificate, or a form, substantially as follows, to wit—further quoting (page 20) from form of certificate as follows: 'It is agreed by each and all of the stockholders hereof that the funds and property of this association shall alone be liable for the debts of the association, whether founded on contract or tort, and that there shall be no personal liability in any event upon the shareholders or trustees.' "

There is nothing in the trust agreement that protects the appellant from this suit. He is sued for the conversion of property of the association to which he had no superior right or title to a creditor. He is sued in Tarrant county, joined with the association, having its domicile there and the place where it was doing business, and joined with J. M. Sims, its president, and E. M. Walker, its secretary, the sole surviving trustees, residents of Tarrant county. He was sued for the conversion of its funds, and for an alleged fraud committed in that county, which enabled him to secure the money of the association by the sale of its property. In the trust agreement itself, as above quoted, it was agreed by the stockholders that the funds and property of the association shall be liable for the debts of the association.

All the parties named are proper parties to this suit. We are not here attempting to pass upon any other question than the plea of privilege. We see no reversible error assigned, and the judgment is affirmed.